# EXHIBIT H

Costa Court, Case Number FL019677 dated <u>April 10, 1996,</u> (Emphasis added),

Exhibit OO, she gave the testimony that she was NOT driving the car as she did

not know how to drive the car.  (T.T. II-73: 8-25, 9:1-2)

>    " 8.    On February 22, 1996, Respondent drove me to
>    his brother's home to pick-up my social security card.
>    When I got into the car, I noticed that Respondent was
>    drunk.  Respondent was driving very fast and was
>    weaving between cars on the freeway.  I was very
>    afraid and told Respondent to slow down and drive
>    carefully.  Respondent then said, "I am going to kill
>    you."  Respondent hit 2-3 cars and accelerated toward
>    a commercial truck.  Respondent rammed my side of
>    the car into the commercial truck.  Respondent then
>    pulled the car to the side of the freeway and got out of
>    the car to talk to the truck driver.  Respondent then
>    drove away and let me on the side of the road.
>
>    9.    A passerby let me use his cellular phone and I
>    called my brother-in-law and told him what happened.
>    The police arrived and questioned me and issued a
>    citation.  I do not know how to drive a car and have
>    never driven a car. (See Exhibit A)"

>    <u>Exhibit OO, Marriage of</u>
>    <u>Randhawa</u>
>    <u>Attachment to Application and</u>
>    <u>Declaration for Order</u>

<u>Page 3:1-17</u> Case No. FL019677,
Filed April 10, 1996 in the San
Francisco City and County and
represented by an Attorney by the
name of Judy B. Louie of the
Nihonmachi Legal Outreach.

It was an intentional and deliberate lie. The sad part is that the judge
KNEW it to be false. Baljit is trying to save her husband, Jagjit from the perjured
statement made earlier that the said accident was not HIS. Jagjit's credibility
would have been devastated if it was proven that he lied under oath. To protect
him, she lied. The judge sided with Jagjit despite this admission.

Jagjit's false statement that he was NOT in the car and that his wife was
driving was given to the Court under the penalty of perjury and the judge
acknowledged his answer. (T.T. I-181:21-25, I-182:1-6)

Perjury is a serious offense. It should not be taken lightly. The judge knew
it and just swept it under the rug. That is not appropriate. Perjury is defined as a
willful statement, under oath, of any material matter, which the witness knows to
be false. *Cabe v. Superior Court* (1998) 63 Cal. App. 4th 732, 735, 74 Cal. Rptr.
2d 331. See also *People v. Howard* (1993) 17 cal. App. 4th 999, 21 Cal. Rptr. 2d
676.

Moreover, DTC was absolutely aware of this fact, that Baljit was NOT the
driver of the car on February 22, 1996. DTC had the Contra Costa Court papers of
Baljit's affidavit in the Order to Show Cause (Exhibit OO) in her possession.
DTC even confirmed it during the trial as to when Baljit FIRST met with

Petitioner and when and on what kind of case Petitioner represented Baljit. (T.T. II73:6-25)

There are seven other areas of her testimony, which could be presented, but because of 14,000 words limitation, (Petitioner has already gone overboard) can be presented later if permitted by this Court.

**B.  Testimony of Jagjit:**

There are over fifty-three instances of false statements made by Jagjit during the depositions and the trial.  If permitted and ordered by this Court, Petitioner would be honored to chronologically present them...However, the obvious lie relates to the above-mentioned vehicle code violation.

Jagjit committed perjury when he testified under oath that he was not the driver of the car of the vehicle code violation which occurred on February 22, 1996. (T.T. I-181:22-25)  It appears that because the citation was in the name of his wife, DTC must have told him to lie and state that it was not he who was driving but his wife.  Apparently he forgot to tell DTC that this lie would not fly because, one, his newly arrived wife had never driven a car in her life and two, people in India drive on the left side of the road and the steering wheel of the cars is on the right side.  Furthermore, over one billion people of India would be in awe if they were told that a young lady from India who had never driven a car in her life took her first drive on the freeways of California.  (Here is an example of disadvantage the California attorneys have over the rest of Americans – the attorney cannot have a jury trial.)

**C.  Testimony of State Bar Witness, Ms. Alice Verstegen:**

Q.  Okay.  Now, that was a February 19, 2003 letter.  On page 2 of the exhibit, there 's a signature.  Would that be your signature?

A.  Yes, it is.

Q. Kanwal Sain, that's K-A-N-W-A-L,  S-A-I-N, who looks like the financial controller of Amerindia Foods.

A. MR. KHANNA:  I'm sorry, just what number is that?

Q. MS. ALBERTSEN:  21

A. Mr. KHANNA: Thanks

Q. Do you recall drafting this letter to Mr. Sain?

A. Yes, I do

Q. Can you tell the Court why you drafted this letter to Mr. Sain?

A. There was so much confusion as to who owned Amerindia Food.  So, what I did to try and get some clarification from the controllers of that corporation was to write to them in there to the different people involved that was on the letterhead.

Q. Do you recall whether you received a response this February 19, 2003 letter from Mr. Sain

A. *No, I did not* (Emphasis added)(T.T. III-10: 4-25, III-11: 1-2)

This statement is false.  Ms. Verstegen is a sixteen years veteran in the State Bar investigator unit.  She is neither a novice nor a new comer in the field of direct and cross-examination.  For her to make a false statement, it can be safely assumed that there were some higher up who were controlling this litigation.

Ms Verstegen DID receive the letter from India and from AFL.  This letter, State Bar Exhibit 27, was addressed to her and it was admitted into evidence.  Furthermore, she did go through this letter. (T.T.III-54: 6-8). The letter in question, Exhibit 27 reads as follows:

[Letterhead]

Alice Verstegen
Attorney, Special Investigator
Office of the Chief Trial Counsel, Enforcement
The State Bar of California

1149 South Hill Street
Los Angeles, California 90015-2299
UNITED STATES OF AMERICA

**REFERNCE YOUR LATTER DATED 19/2/2003 AND ADDRESSED
TO MR. KANWAL SAIN, FINANCIAL CONTROLLER OF AMERINDIA
FOODS LIMITED (AFL)**

It could be said that she overlooked this 'block capital bold' reference. Furthermore, the letter was duly signed by Mr. Kanwal Sain. However, when this statement is compared to the other vital statements, it absolutely confirms that Ms. Verstegen committed perjury under oath.

### XI. DELAY:

*"At some point" in time is cold comfort to an attorney whose practice is quietly disintegrating while the bar fiddles. I do not question the bar's good faith in such matter. It is apparent, however, that at some point" provides absolutely no time and precious little incentive to the bar to proceed expeditiously with the underlying disciplinary matter. Why should they? The attorney has already been placed on indefinite suspension*

Justice Kaufman  in , _Conway v. State Bar_ (1989) 47 Cal..3d 1107 at 1136

The State Bar trial proceedings are conducted on complicated digital recordings which have the so called 'state-of-the-art' technology to download and listen. This digital recording is under total control of the hearing department judge.

51

There are no safeguards afforded to the charged attorney. Petitioner did make a motion for a live court reporter to the hearing department judge and this motion was denied. (CD Partial Retrial)

There is no question that the State Bar Court Review Department has taken over thirteen months to order petitioner to submit his brief within the next 45 days. Petitioner was unable to file his brief because the NEW CD of the partial re-trial was also corrupt and indiscernible in that petitioner could not hear or discern what the interpreter was saying to the witness in Punjabi language and what the witness was replying in Punjabi language. Despite petitioner's repeated requests for a clean and discernable CD, as of this date petitioner has NOT received it. Hearing department contends that the CD is discernable.

Because of this humungous delay and possibility of delay of another six months to two years of Review Department review, petitioner has opted to seek review by the Supreme Court.

Petitioner cannot petition the Supreme Court if he has not exhausted his administrative remedies. Cite.

This delay has prolonged the agony of not being able to make a living. It is an extreme prejudicial act committed by the State Bar Court hearing department judge. In Conway, supra, the Court stated:

> We need not here attempt to determine when delay in the final disposition of the underlying disciplinary charges would amount to a denial of due process, although we would question whther a span of more than one year from inception to the decision of the review department could be

52

countenanced in any circumstances. fn. 8. We trust the State Bar will take

not of the guidance provided by Loudermill, supra, 470 U.S. 532, and

similar decisions in formulating rules of procedure to implement the

legislative mandate to expedite resolution of the underlying charges in

these case. fn.9  47 Cal. 3d at 1123.

In *Gates v. Department of Motor Vehicles* (1979) 94 Cal.App.3d 921 , 15Cal.Rptr.

791, the Court stated:

> "A number of State Bar disciplinary proceedings suggest that the trial
> court properly considered the delay here. In Vaughn v. State Bar (1973) 9
> Cal.3d 698 , 702 [108 Cal.Rptr. 806, 511 P.2d 1158], the court held that a
> four-year delay between the alleged misconduct of an attorney and the
> initiation of formal proceedings against him, in violation of time
> limitations set by the Rules of Procedure of the State Bar, did not require
> dismissal in the absence of prejudice. That statement directly suggests that
> dismissal would be warranted if a party established that he was prejudiced
> by an unreasonable delay in initiating charges against him. (See also
> Lewis v. State Bar (1973) 9 Cal.3d 704 , 714 [108 Cal.Rptr. 821, 511 P.2d
> 1173]; Taylor v. State Bar (1974) 11 Cal.3d 424 , 434 [113 Cal.Rptr. 478,
> 521 P.2d 470]; Caldwell v. State Bar (1975) 13 Cal.3d 488 , 496 [119
> Cal.Rptr. 217, 531 P.2d 785].)" 94 Cal. App. 3d 927

To keep an attorney suspended from practice for over seventeen months

and the review department does not expedite the hearing for over fourteen months

violates Petitioner's due process rights.

## XII. CONCLUSION

Petitioner, respectfully requests this Court to please consider the fact that

not all attorneys are bad and shysters and take advantage of uneducated and

unsophisticated people or immigrants.  Some unsophisticated clients can also be

unscrupulous and take advantage of attorneys.  Attorneys can also be gullible and

taken advantage off.  The judge knows the background of this husband and wife

team, and yet she brushes this background off as "While the Randhawas may have

had personal problems in the past, those issues are irrelevant...." (De. P. 23:25).

The Randhawas have purposefully committed 'perjury' right in front of her. **Jagjit** has had three DUIs and the judge has acknowledged three DUIs. (T.T. I-136:8-16, I-158:4-7). There are twenty-one clear instances of Jagjit making false statements and still his testimony is credible. No wonder there are millions of lawyer jokes where the lawyer is indeed the bad guy but there is not a single joke where the client is the bad guy.

Ironically, Petitioner has during the time of this incident, November, 1996 and the date of his suspension, October 24, 2004, has represented over 98 similarly situated immigrants from India and has provided them excellent, customized services at very discounted rates as these people needed help and Petitioner could help because of the knowledge of culture and language.

Petitioner, respectfully requests the Court to please evaluate all the evidence presented herein and if the Court feels that there any evidence which points to Petitioner's guilt, Petitioner would gladly accept whatever the Court decided. However, Petitioner emphatically stresses that he has maintained excellent professional standards and could never have ever resorted to take money from these people.

Petitioner awaits the verdict of "NOT GUILTY" on all counts. As the proceedings have taken a considerable toll on the livelihood, Petitioner sincerely requests this Court to please issue an immediate stay of the order of the State Bar at least till this Court decides the case.

Petitioner encloses an important PART TWO as part of this with this supporting brief separately as this Petition exceeds the limit of 14,000. An extremely careful effort has been made to shorten the brief and eliminate several key issues. However, because of the complexity of the case, it has just not been possible. The Court may or may not allow PART TWO to be a part of this brief.

This brief is of 15,618 words. Petitioner respectfully apologizes for going overboard.

**CERTIFICATE OF COMPLIANCE PURSUANT TO
CALIFRONIA RULES OF COURT, RULE 14(C) (1) AND
FED. R. APP. 32(A)(7) AND CIRCUIT COURT RULE 32-1
FOR CASE NUMBER 141019**

Pursuant to California Rules of Court RULE 14(C) (1), I certify that the attached Petition is proportionally spaced, has a 13 point typeface and contains 15,540 words of the Main Brief.  PART Two, attached herewith, contains 4,471 for which an urgent appeal for acceptance to please disregard the noncompliance as extremely important precedent setting cases and matters are discussed before this Court

Dated:    April 10. 2006

By:_____
                  Padam K. Khanna

VERIFICATION

I, PADAM KUMAR KHANNA, declare as follows:

I am the Petitioner in this action.  I have reviewed the attached

"Petition for Writ of Review to the Supreme Court of California, Supporting Brief

And Emergency Request for

Stay of Hearing Department State Bar Court Order of Involuntary Inactive

Enrollment Dated: October 21, 2004."

I, declare under the penalty of perjury under the laws of California that the

foregoing is true and correct.

Executed at Berkeley, California  on April 10, 2006

Padam K. Khanna

## PROOF OF SERVICE

I am a resident of the City of Berkeley, County of Alameda, California.  My address is 736 Grizzly Peak, Berkeley, California 94708.  I am over the age of eighteen years.

Today, I served the attached document,

RESPONDENT'S PETITION FOR REVIEW
AND
SUPPORTING DOCUMENTS

by first class mail, postage prepaid, true and correct copy  of the above documents via United States Postal Service and addressed to

MS. TAMMY ALBERTSEN-MURRAY
DTC
STATE BAR OF CALIFORNIA
180 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105


State Bar Court
1149 South Hill Street
Los Angeles, California 90015

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on


April 10, 2006                                 CANDACE KHANNA

PART TWO

**PART TWO**
**IMPORTANT QUESTIONS OF LAW**

1. **Whether rule 220(c) of the Rules of Procedure of the State Bar of California grants exclusive power and authority to the hearing department judge of the State Bar Court wherein she can suspend the license of a charged attorney within three days of her decision by placing him on an involuntary inactive enrollment.**

Rule 220(c) of the Rules of Procedure of the State Bar Court impinges upon the core zone of Supreme Court authority over attorney discipline. It violates a charged attorney's right to a judicial hearing and it further violates a charged attorney's right to due process and equal protection of the law under the Equal Protection Clause of the Fourteenth Amendment of the United State Constitution by not providing judicial safeguards.

    **A. Separation of Power:**

> *Hence, legislative participation in appointing the Commission's members does not "impinge[ ] upon a core zone of executive branch authority" (maj. opn., ante, at p. 47), or upon an "exclusively executive prerogative" (id., at p. 46), as prohibited by the separation of powers clause.*
>
> Justice Baxter in *Marine Forests Society et al. v. California Coastal Commission* (2005) 36 Cal.4th 1 at 59.

Separation of Power doctrine has been forcefully applied in Federal cases. In *Buckley v. Valeo*, (1976) 424 U.S. 1, 109-143, the United States Supreme Court

1

addressed the issue of 'separation of power' in the provisions of a federal statute which gave the Congress power to elect Federal Election Commission members by the President pro tempore, Speaker of the House of Representative and by the President of the United States. The salient issue was that the statute gave the authority to the executive branch (President) to appoint an executive office. According to the Court, this clearly violated the separation of power doctrine. In *Bowsher v. Synar*, (1986) 478 U.S. 714, the Court held that the structure of the Constitution does not permit Congress to execute the laws; it follows that Congress cannot grant to an officer under its control what it does not possess. 478 U.S. at 721-727.

However, California Supreme Court has interpreted this separation of power doctrine, embedded in Article III, section 3 of the California Constitution, in different ways than the U.S. Supreme Court has in federal cases. In a recent case, *Marine Forests Society et al. v. California Coastal Commission* (2005) 36 Cal.4[th] 1, the Court has held that the appointment of the members of the California Coastal Commission by the Legislature did not violate the separation of power doctrine even though as an administrative agency termed as legislative body, it did perform quasi-executive and quasi-judicial functions.

The crucial differentiation between Federal and California state cases is the impingement of one branch upon the core zone of the other branch or upon an exclusive prerogative of that branch. See Justice Baxter's concurrence in *Marine Forests, supra.* 36 Cal. 4th at 59.

In our case it is absolutely clear that both the Legislature through statute 6007(c)(4) and the State Bar rule 220(c) of the Rules of Procedure of the State Bar Court impinge upon the very core of the exclusive prerogative of the Supreme Court and that is the discipline and admission of attorneys.

Justice Kennard emphasized and clearly distinguished the court's holding in *Marine, supra* and her dissent in *Obrienv. Jones*, (2000) 23 Cal. 4th 40. She stated:

"In brief, the intrabranch appointment laws at issue in *Obrien*, in my view, improperly invaded this court's authority over attorney discipline, whereas the interbranch appointment laws at issue here do not improperly invade the traditional authority of the Governor or of any other constitutional officer of the executive branch." 36 Cal. 4th at 62.

### B. Judicial Hearing:

*"Attorneys are the only persons whose state occupational licenses can be revoked or suspended without a judicial hearing."*

Justice Kennard, *In re Rose*, (2000) 22 Cal.4th 430 at 460?

One of the greatest drawbacks of the present attorney discipline system is an absolute lack of California attorney's entitlement to a plenary review by an Article VI, section 1 of the Constitution of California court of law. The Court in *Rose, supra,* has ruled that an attorney discipline matter can be summarily dismissed by the Supreme Court without presentation of oral arguments or a written decision. This so called 'recommendation' of the hearing judge becomes a 'final' decision and the attorney is disbarred. In fact it is a **judgment** meted out by an Article VI, section 1 court – the highest court of the state - The Supreme Court of California. There is no judicial hearing. What happens to a California attorney is that he can be disbarred, his right to make a living is taken away in California by a judgment from the Supreme Court without a hearing and without a written opinion.

3

It can not be said that the final disposition by the Supreme Court is not a judgment. If the Supreme Court compares it to the determination of a preemptory writ of mandate because there the oral arguments are not contemplated, it is not. But such is not the case here. A summary denial of review without oral arguments and written decision is the final adjudication of the charged attorney's rights. It is a judgment as defined in California Code of Civil Procedure, § 577 which states that "A judgment is the final determination of the rights of the parties in an action or proceeding."

### C. Judicial Safeguards:

> *The contemporary anomaly is that history has produced less in way of judicial protection than our statutes give to, say, veterinarians and cosmetologists. Some of the circumstances that have contributed to that anomaly – the enormous growth of the legal profession in California and the consequent need for an elaborate disciplinary apparatus, for example – are matters lying beyond the control of this or any other court.*

Justice Brown in  *In re Rose* (2000) 22 Cal.4[th] 430 at 467

One of the central issues of this case is that of the judicial safeguards in place for attorneys.  In the State Bar Court proceedings, particularly as this case illustrates, attorneys are treated as people of different breed.  No civil procedure safeguards and no criminal procedure safeguards are available to them. It has been held that State Bar disciplinary proceedings are administrative but of a nature of their own and are not governed by the rules of procedure governing civil or

4

criminal litigation although such rules have been invoked to insure administrative due process. See *Emslie v. State Bar* (1974) 11 Cal.3d 210, 225-226. See also *Rose, supra* where the Court stated that "As established in Part II, the State Bar Court and attorney discipline proceedings are *sui generis* and not necessarily governed by procedures applicable to ordinary civil and criminal litigation." 22 cal.4[th] at 443. See also *In re Attorney Discipline System* (1998) 19 Cal.4[th] 582 at 600, 93 Cal. Rptr.2d 298 at 315,

*Sui generis* means 'constituting a class alone: unique and peculiar, see Webster Collegiate Dictionary, Eleventh Edition, p.1249.

To subject a certain group of people of the country, whether they are officers of the court or not, is fundamentally violative of the very basic principles set forth by our forefathers in the Fourteenth Amendment of our Constitution. The Fourteenth Amendment states: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *Fourteenth Amendment - Rights Guaranteed Privileges and Immunities of Citizenship, Due Process and Equal Protection, U. S. Constitution.*

There are no safeguards, no checks and balances, no remedies available to the California attorney so suspended.

The Supreme Court in *Conway v. State Bar* (1989) 47 Cal.3d 1107, 1120-23, states that "A State Bar decision ordering the involuntary inactive enrollment of an attorney in **exigent** (emphasis added) circumstances (§ 6007, subd. (c) may become effective before we consider the matter, but only because the order is

subject to our immediate, independent review." Id at  1120-23. Cited also in *Rose, supra* as footnote 7 at 22 Cal.4th at 440.

This safeguard does not protect the attorney in the California Disciplinary System as the hearing department judge is the sole authority to decide what is an exigent circumstance and what act construes as an act of moral turpitude.

Furthermore, this safeguard that the order is subject to the Court's immediate, independent review is very illusive, contradictory, confusing and complex. How and when does the suspended attorney (involuntary enrollment) seek the immediate and independent review?

Rule 952(a) of the Rules of Court?

This rule triggers only after the State Bar Court has filed the 'final' decision with the Supreme Court. What happens if the State Bar Court, for one reason or the other, does not make its decision 'final' and refuses to certify it as such and the inactive enrollment drags on to way over the suggested one year limitation (Conway, 47 Cal. 3d at ??) – in this case over sixteen months and counting. Meanwhile the charged attorney is absolutely out of remedies and in dire need of work to make a living. For over sixteen months Petitioner here has been denied his right to make a living.

One of the glaring example here is the hearing department of the State Bar Court's total and absolute control over the digital tape recordings of the proceedings and then somehow or the other declaring that some portions of the tape which are vital and important tapes are corrupt and a new partial retrial a year later would be conducted. Even the portions of the supposedly 'final' tape are corrupt. This is just one of the examples which clearly indicates that rule 952(a) with all its good intentions is not the remedy available for the suspended attorney.

6

It is, very respectfully, submitted to this Court to please clarify these important issues of law as none of the landmark cases of *Conway, Attorney Discipline System, Rose* and *Obrien, supra,* provide clear answers.

**2. Whether California State laws permit partial retrial in the State Bar Court where substantial and material portions of the first trial audio recorded CD, consisting of one hour forty minutes of crucial cross-examination of principal witness, was tampered with, suppressed, technically corrupted, lost or intentionally erased.**

The three days trial ended on August 19, 2004. On or about October 21, 2004, the judge issued her decision. The fact that an extremely important one hour forty minutes audio recording was totally indiscernible was not mentioned or even alluded to in this decision. (See Decision, October 21, 2004). Within the prescribed time, Petitioner filed his request for appeal with the review department of the State Bar Court. While preparing for the appeal, Petitioner discovered that a crucial portion of cross-examination of Jagjit was tampered with. It could have been a technical fault but on examination by an independent expert revealed that it was indeed tampered with. The digital recording machine used in the proceedings was under the total and exclusive control of the hearing department judge.

Petitioner immediately requested the review department for written transcripts from a recognized Court Reporters Agency. Petitioner was asked to advance $3,000 to the review department before any action could be taken. (Incidentally it would not have cost $3,000 for a live court reporter in the first place.)

It took over four months for the review department to send the scribed transcripts. Sure enough, one hour forty minutes of the tape was TOTALLY indiscernible.

Petitioner filed a Petition for Interlocutory Review and a Grant of New Trial which was denied.

California law generally does not allow partial re-trials. In our case at hand, the parties were unable to stipulate to what occurred during the missing portion. There was no way the parties could reach an agreed statement. Because of this disagreement, there were only two remedies left: First the Petitioner could have the trial court settle a statement of facts concerning the missing testimony (this remedy was absolutely unthinkable because of the trial judge's confirmed and apparent bias towards Petitioner) and second the only remedy left was a new trial. See, *Code of Civil Procedure* § 914, *Fickett v. Rauch*, 31 Cal. 2d at 111-112, *Weinstein v. E.F.Huttin & Co.* (1990) 220 Cal. App. 3d 364, *Witkin, New California Rules on Appeal* (1944) 17 So. Cal.Rev. 80, 117-121 and *Witkin, Four Years of the Rules on Appeal* (1947).

In *Weinstein v. E. F. Hutton & Co. (1990) 220 Cal. App. 3d 364, 269 Cal. Rptr. 443,* appellants discovered on appeal that the reporter's transcript could not be completed because the reporter's notes of the first day were lost. Appellants moved the trial court to grant a new trial under Code of Civil Procedure section 914 on the grounds of the loss of the reporter's notes. The trial court denied the motion for new trial. Instead, the court ordered that the witness who previously testified on the first day of trial testify again, and that a transcript of his new testimony be added to the transcript of the second and third days of trial in order to "complete" a record for the appeal

The court ruled as follows:

"There are several remedies available when the loss of a substantial portion of the  reporter's notes of trial prevents completion of a reporter's transcript which is essential to an appeal.

Sometimes the parties can reach an agreed statement of facts or stipulation concerning the missing testimony. (See Rule 6, Cal. Rules of Court.)

In the absence of agreement there are two basic remedies: The appellant may have the trial court settle a statement of facts concerning the missing [220 Cal.App.3d 369] portion (Rule 4(e), Cal. Rules of Court) fn. 2 or the appellant may be granted a new trial. (Code Civ. Proc., § 914.) fn. 3 (Fickett v. Rauch, supra, 31 Cal.2d at pp. 111-112, 116; Weisbecker v. Weisbecker (1945) 71 Cal.App.2d 41 , 47-48 [161 P.2d 990]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 458-461, pp. 450-454; Witkin, New California Rules on Appeal (1944) 17 So.Cal.L.Rev. 80, 117-121; Witkin, Four Years of the Rules on Appeal (1947) 35 Cal.L.Rev. 477, 488-490.)

We hold, therefore, that the particular procedure adopted by the trial court's order is not authorized cause to the trial court to reconsider the permissible alternatives of reaching an agreed or settled statement or granting a new trial. [220 Cal.App.3d 371]  The order denying a new trial is reversed and the cause remanded for further proceedings consistent with this opinion." 220 Cal. App. 3d 366-371.

In *Santa Cruz Redevelopment Agency v. Izat* (1995) 37 Cal.App.4[th] 141, 43 Cal.Rptr.2d 366, the court said that, " A new trial motion on the ground that the reporter's transcript is has become unavailable should ordinarily be granted where a reason able showing is made that the transcript is necessary to present substantial issues. (Rambo v. Rambo (1948) 84 Cal.App.2d 632." Id at page 143.

## B.THE STATE BAR HAS ACTED WITHOUT OR IN EXCESS OF ITS JURISDICTION

> *"The State Bar does not admit anyone to the practice of law, it does not finally disbar or suspend anyone, and it does not ultimately establish ethical codes of conduct. All of those functions are reserved by California law to the State Supreme Court. See Cal. Bus. & Prof. Code Ann. 6064 (West 1974) (admissions); 6076 (rules of professional conduct); Cal. Bus. [496 U.S. 1, 12] & Prof. Code Ann. 6100 (West Supp. 1990) (disbarment or suspension)."*

Late Chief Justice Rhenquist in *Keller v. State Bar* (1990) 496 U.S. 1at 10

The State Bar is a constitutional entity, placed within the judicial article of the California Constitution, and thus expressly acknowledged as an integral part of the judicial function. (Art. VI, § 9; *In re Attorney Discipline System (1998) 19 Cal.4th 582, 598-599, 79 Cal.Rptr.2d 836, 967 P.2d 49.)* " ' "We have described the bar as 'a public corporation created ... as an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys.' [Citation.] In those two areas, the bar's role has consistently been articulated as that of an administrative assistant to or adjunct of this court, which nonetheless retains its inherent judicial authority to disbar or suspend attorneys. [Citations.]" [Citations.]' The State Bar Court, however, is not itself a judicial court established by article VI. [FN4] FN4. Article VI, section 1, states: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, and municipal courts. All courts are courts of record." *In re Attorney*

*Discipline System, supra,* 19 Cal.4th at pp. 599-600, 79 Cal.Rptr.2d 836, 967 P.2d 49.

The major issues are whether the State Bar Court which is not a judicial court, has the jurisdiction and authority to decide questions of law such as ethical conduct involving 'moral turpitude' and making a final decision that the particular misconduct involving moral turpitude is so egregious that it warrants protection of general public and suspension of the charged attorney's license.

### 1. Moral Turpitude:

Moral Turpitude is a ***question of law*** and questions of law must be decided by courts of law. As indicated above, State Bar Court is not a judicial court as defined in the State's Constitution, Article VI, section 1. Particularly in attorney discipline matters, it is the Supreme Court which has the authority and power to declare a particular act as an act constituting moral turpitude. (See *Rose, supra, Attorney Discipline, supra, infra* and, *O'Brien v. Jones, infra*)

Commission of an act of moral turpitude is a very serious matter. To accord plenary authority to a single non Article VI, section 1 judge to adjudicate such ethical conducts clearly violates the due process. It carries a tremendous stigma and life-long scar on an otherwise law-abiding life of a citizen. (Petitioner, in all his 69 years of life, has only one traffic ticket going 40 miles in a 35 miles zone.)

In *Chadwick v. State Bar* (1989) 49 Cal.3d 103, 776 P.2d 240, 260 Cal.Rptr. 538, the Court stated:

"Whether the facts and circumstances of petitioner's misconduct constitute moral turpitude is a question of law to be determined by this court. (See *In re Strick* (1983) 34 Cal.3d 891, 901 [196 Cal.Rptr. 509, 671 P.2d 1251]; *In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97].) (3) As we have noted

11

on numerous occasions, the concept of moral turpitude escapes precise definition. (See *In re Strick, supra*, 34 Cal.3d 891, 901.) Moral turpitude has been described as an "act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442].) It has been described as any crime or misconduct without excuse (*In re Hallinan* (1954) 43 Cal.2d 243, 251 [272 P.2d 768]) or any dishonest or immoral act. The meaning and test is the same whether the dishonest or immoral act is a felony, misdemeanor, or no crime at all. (1 Witkin, Cal. Procedure (3d ed. 1985) § 375, p. 425.)" Id at 49 Cal.3d at 113.

A California attorney charged with an act, whether it constitutes "moral turpitude" in the eyes of law or not, is at the whims and fancy and the mercy of a single judge of the hearing department. She has an absolute power to call an act, any act, as an act of moral turpitude and there are no safeguards. Attorneys, so charged, are NOT entitled to a jury trial like all other Americans similarly situated. It is *sui generis* and the judge of the hearing department is the ultimate authority to call act as an act of 'moral turpitude' and take away the charged attorney's license by placing him on an involuntary inactive enrollment.

A sincere request is made to the Supreme Court to please clarify whether the Supreme Court has delegated its inherent power in declaring an act as a misconduct involving moral turpitude to a single judge of the State Bar Court.

There is some indication that the Supreme Court might have delegated its power to the single State Bar Court judge.

In *Conway, supra*, the Court stated that, "It suffices to note that while petitioner may have a right to a hearing before he is prevented from practicing law, he has no right to a particular forum or particular procedures, provided only

12

<u>that the matter is heard by an impartial arbiter under procedure that comport with</u> <u>due process</u>"(Emphasis added) FN7 at p 1120.

If such is the case, would the Supreme Court please clarify this confusion?

## 2. Exclusive Power to Protect The General Public:

This controversial single monetary transfer of money by a client to a foreign company for investment purposes which occurred eight years ago and was certainly not solicited by Petitioner has been declared by the judge to be an act of moral turpitude which was so egregious that the protection of the public at large was warranted.

The prejudicial impact of such a decision is far more severe on the charged attorney than the probative value it seeks to secure for the protection of general public. Here the attorney loses his license and is deprived of his right to make a living. Whereas the future harm which could be inflicted to the general public is very speculative. A single judge should not be entrusted with such power. As is the case here, both the judge and DTC are aware of the fact that this single incident occurred in 1996. The complaint was filed in November 2001. There was a period of almost FIVE years for DTC to investigate whether there were any other charges or any other complaints or any other even the remotest incident which would have considered Petitioner as a risk to the general public. The judge delivered her decision on October 21, 2004. Except for her personal, prejudiced prediction, there is nothing in the record which favors judge's conclusion.

IN FACT, PETITIONER SUCCESSFULLY AND DILIGENTLY REPRESENTED OVER 98 SIMILARLY SITUATED INDIAN IMMIGRANTS FROM INDIA LIKE THE RANDHAWA DURING THIS PERIOD OF 1996 TO 2004. These clients received wonderful, personal and customized (language and

cultural help) legal services at reduced rates. As a matter of fact the judge deprived these needy clients the services of a wonderful, kind, proficient attorney who understands their culture and language.

In a concurring opinion in *Conway, supra*, the Court laid down certain procedures for the State Bar Board (which applies to the hearing department judge of the State Bar Court). These are:

> FN1. Although the statute has since been amended in certain respects, which we will touch on in the course of this opinion, at the time of petitioner's case, it provided, in pertinent part: "(1) The board may order the involuntary inactive enrollment of an attorney upon a finding that the attorney's conduct poses a substantial threat of harm to the attorney's clients or to the public....
>
> "(2) In order to find that the attorney's conduct poses a substantial threat of harm to the attorney's clients or the public, each of the following factors shall be found, based on all the available evidence, including affidavits:
>
> "(A) The attorney has caused or is causing substantial harm to the attorney's clients or the public.
>
> "(B) There is a reasonable likelihood that the harm will reoccur or continue.
>
> "(C) The balance of interests, as between the attorney on the one hand and the attorney's clients and the public on the other hand, favors an involuntary inactive enrollment.

14

"(3) The board shall formulate and adopt rules of procedure to implement this subdivision.

"In the case of an enrollment pursuant to this subdivision, the board shall terminate the involuntary inactive enrollment upon proof that the attorney's conduct no longer poses a substantial threat of harm to the attorney's clients or the public...."

All further statutory references are to the Business and Professions Code unless otherwise indicated."

*Conway v. State Bar* (1989) 47 Cal. 3d 1107 *Footnote 1.*

The judge has failed to show that since November 1996 – the date of commission of this incident and the date of his suspension, October 2004, Petitioner has been or was a danger to the public and the protection of general public was necessary.

The judge ignored all these guidelines proposed by the Court in *Conway.*

In *In re Franklin*, 41 Ca. 3d 700, the Supreme Court stated:

"Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys." ( *Chefsky, supra, 36 Cal.3d 116, 132,* quoting *Jackson v. State Bar (1979) 23 Cal.3d 509, 514* [153 Cal.Rptr. 24, 591 P.2d 47] Id at 710

## C. PETITIONER DID NOT RECEIVE FAIR HEARING

### . a. Judicial Misconduct:

> *A trial judge commits misconduct if it persistently makes*
> *discourteous and disparaging remarks to defense counsel*
> *so as to discredit the defense or create the impression that*

15

*it is allaying itself with the prosecution (Citations omitted)*

J. Moreno in *People v. Strum* (March 2006) –Cal. 4ᵗʰ – No. S031423

The Supreme Court in *People v. Strum* ruled that the trial judge committed judicial misconduct during the penalty phase of this case. Petitioner, respectfully, requests this Court to please evaluate the conduct of the judge in our case in comparison to the *Strum* case.

1.    One hour forty minutes of crucial cross-examination of principal witness, Jagjit was missing and has been declared indiscernible. It was the duty of the judge when she delivered the Decision that this important fact should have been communicated to Petitioner. No information was given to Petitioner and he was suspended from practice of law three days later by the judge. This is a reversible error as it clearly violates due process of Petitioner. Judge was aware of the fact that this important testimony was missing. She was the last person who had access to the recording machine because it is assumed that she must have prepared her Decision listening to the recording. If the judge herself has not destroyed this crucial tape then it was her duty to apprise Petitioner about the fact. She had the sole and exclusive control over the recording machine and equipment. This action violates Bardy and Augurs tripartite test. See infra.

1.    During pretrial conference, Petitioner very humbly asked for forgiveness of the court if Petitioner because of lack of courtroom experience offended the integrity of the bench. (Pretrial Conference). The judge sneered and DTC laughed and shouted "Teflon." (Pretrial Conference CD)

2.    During pretrial conference, it became very apparent that the judge had clearly made up her mind that Petitioner was guilty the judge Petitioner presented a Motion in Limine with seven

3.     During direct examination of Petitioner by DTC, the judge intervened *sua sponte* only FIVE times in 123 pages of testimony. Whereas during cross-examination by Petitioner, the judge intervened approximately in 137 pages in a total of 147 pages (times in all 147 pages but

4.     During cross-examination of Jagjit, judge interfered and ridiculed Petitioner in a very offensive way to which Petitioner strongly objected. This portion of the testimony has either been erased or technically corrupted.

Our High Court is very particular about the dignity, integrity and decorum of our court. Petitioner has fully maintained that. Petitioner has always referred to the judge as Ma'am and Your Honor throughout the proceedings despite her laughing and smirking. In one situation, Petitioner asked the witness,

**b.. Denial of chance to rebut a weird and demonstrably false allegation by the judge violated Petitioner's constitutional rights of a fair hearing.**

During the trial, DTC introduced an envelope which contained a letter from the Chairman of AFL, India,  through the direct testimony of her witness, Ms. Verstegen, the State Bar investigator.

It started with the issue of whether the letter was genuine. The investigator testified that she was at a loss as to how this mysterious letter got to her desk. (T.T. III-19:17-25, p.20:1-25, p.21:1-25). It was State Bar Exhibit 27.

APPENDIX A

STATE BAR COURT
1149 South Hill Street
Los Angeles, California 90015
(213) 765-1400

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | S_____ |
| | 02-O-11383 |
| **PADAM KUMAR KHANNA,** | Transmittal of State Bar Court Recommendation |
| **Member No. 85229,** | |
| A Member of the State Bar. | Original Proceeding |

To the CLERK OF THE SUPREME COURT:

1.    RECOMMENDATION.  The State Bar Court hereby transmits its recommendation in the above-entitled matter, as reflected in the enclosed proposed order subject to review by the Supreme Court.

2.    RECORD ENCLOSED.  Enclosed please find the official State Bar Court file in the above-entitled matter including:

State Bar Exhibits          <u>1 - 28</u>

Respondent's Exhibits      <u>P; DD; OO</u>

Number of Transcript(s) of State Bar Court Hearings      <u>4</u>

3.    IMPOSITION OF COSTS.  Pursuant to Section 6086.10, Business and Professions Code, statutorily authorized costs of this disciplinary proceeding should be awarded to the State Bar of California. Enclosed are the Certificate of Costs and Statements of Costs pursuant to rule 280, Rules of Procedure for  State Bar Court Proceedings.

4.    MEMBER/COUNSEL ADDRESS:

State Bar records list the following current address for the above member and/or counsel:

Khanna & Narain
2600 10TH Street
Berkeley, CA 94710-2522

5.    REFERENCE GIVEN MEMBER.    We have this day mailed to the member reference information in re:

        rule 951, California Rules of Court
        re:  Authority of the State Bar Court
        rule 952, California Rules of Court
        re:  review of State Bar Court decision
        rule 953, California Rules of Court
        re: effective date of disciplinary orders and decisions
        rule 955, California Rules of Court
        re:  duties of disbarred, resigned or suspended members
        Business & Professions Code Section 6083
        re:  petition to review State Bar Court decision
        Business & Professions Code Section 6086.10 and 6140.7
        re:  costs of disciplinary proceeding

                                            Janet DuVal
                                            State Bar Court Administrator


Dated:  February 8, 2006                    By: _____
                                            Sonia Sotomayor
                                            Deputy Court Clerk

(State Bar Court Case No. 02-O-11383)


**IN THE SUPREME COURT OF CALIFORNIA**

**EN BANC**


═══════════════════════════════════════════════


IN RE **PADAM KUMAR KHANNA** ON DISCIPLINE


═══════════════════════════════════════════════


It is hereby ordered that **PADAM KUMAR KHANNA, State Bar No. 85229**, be disbarred from the practice of law and that his name be stricken from the roll of attorneys. Respondent is also ordered to comply with rule 955 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the date this order is effective.* Costs are awarded to the State Bar.


*(See Bus. and Prof. Code, § 6126, subd. (c).)


_____
Chief Justice

## *IMPORTANT INFORMATION FOR*
## *STATE BAR MEMBER*

The proceedings before the State Bar Court in the case referenced in the attached Transmittal of State Bar Court Recommendation have now been completed and the State Bar Court's final recommendation is being transmitted to the California Supreme Court.

Following are references to various provisions of the California Rules of Court and the California Business and Professions Code which you may wish to review in connection with your further rights and obligations relating to this proceeding:

## *WARNING!*  IN DETERMINING YOUR RIGHTS AND OBLIGATIONS, YOU SHOULD REVIEW THE ACTUAL TEXT OF THESE RULES AND STATUTES!

**Rule 951, California Rules of Court**: Pursuant to rule 951, the Supreme Court has delegated to the State Bar Court the power to take various actions that may be relevant to your proceeding, including the right to (a) extend the time within which a member must take and pass a professional responsibility examination; (b) make corrections and minor modifications to a member's probation; (c) extend the time within which a member must comply with rule 955 of the California Rules of Court; and (d) delay temporarily the effective date of, or temporarily stay the effect of, an order for a member's disciplinary suspension.

**Rule 952, California Rules of Court**: Rule 952 specifies the time period within which a petition to the Supreme Court by a member to review a decision of the State Bar Court must be filed.  Rule 952 also sets forth the required contents of the petition and the manner of service of that petition.  (See also, **Bus. & Prof. Code, § 6083.**)

**Rule 953, California Rules of Court**: Rule 953 sets forth the date upon which orders of the Supreme Court in disciplinary and moral character proceedings become effective.

**Rule 955, California Rules of Court**: With respect to those cases in which the State Bar Court has recommended that the requirements of rule 955 be imposed, subdivision (a) of this rule sets forth the specific duties that are required to be performed by the member, while subdivision (b) specifies the requirements of the affidavit of the member's compliance with the provisions of rule 955.

**Business and Professions Code Sections 6086.10 and 6140.7**: These provisions of the State Bar Act relate to the imposition of disciplinary costs, the filing of motions for relief from disciplinary costs or an extension of time within which to pay such costs and the manner and time within which such disciplinary costs must be paid.

# CERTIFICATE OF SERVICE
## [Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Deputy Court Clerk of the State Bar Court. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice in the City and County of Los Angeles, I deposited a true copy of the following document(s):

**TRANSMITTAL OF STATE BAR COURT RECOMMENDATION DATED FEBRUARY 8, 2006 AND PROPOSED ORDER**

in a sealed envelope for collection and mailing on that date as follows:

[X]    by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

> **PADAM KUMAR KHANNA**
> **KHANNA & NARAIN**
> **2600 10TH ST**
> **BERKELEY CA 94710-2522**

[X]    by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

> **TAMMY M ALBERTSEN-MURRAY, Enforcement, San Francisco**

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on **February 8, 2006.**

**Sonia Sotomayor**
Deputy Court Clerk
State Bar Court

STATE BAR COURT
OF THE STATE BAR OF CALIFORNIA
1149 South Hill Street
Los Angeles, CA 90015-2299
(213) 765-1400

In the Matter of

PADAM K. KHANNA, No. 85229

Member of the State Bar

PURSUANT TO STATE BAR COURT RULE

# FILED

FEB 08 2006

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

| CERTIFICATE OF COSTS-ORIGINAL MATTER | CASE NO.: 02-O-11383 |
|---|---|

1. **TAXABLE COSTS** of the Office of the Chief Trial Counsel (Code Civ. Proc. §1033.5(a)).

| | | |
|---|---|---|
| $ | | Reporters transcript of State Bar Court proceedings. |
| $ | 294.00 | Witness fees pursuant to Government Code. |
| $ | 1,332.75 | Deposition expenses, including transcript and travel costs. |
| $ | | Service of process. |
| $ | | Photocopies of exhibits prepared by outside service. |
| $ | | Models and blowups of exhibits prepared by outside service. |
| $ | | |

2. **REASONABLE COSTS PURSUANT TO FORMULA APPROVED BY THE BOARD OF GOVERNORS** (Bus. & Prof. Code § 6086.10(b)(3)).

| | | |
|---|---|---|
| $ | 11,107.00 | Base Charge. |
| $ | | Charge of $619 for Investigations over one. |
| $ | | Minimum charge for consolidation matter. |
| $ | | Resignation charge ($ 89.00) |

3. **OTHER REASONABLE COSTS**—Incidental expenses of the Office of the Chief Trial Counsel (Bus. & Prof. Code § 6086.10(c)).

| | | |
|---|---|---|
| $ | | Cost for certifying court documents. |
| $ | 83.20 | Cost for copying bank records |
| $ | 159.57 | Staff travel expenses. |
| $ | | Cost for copying bank records |

kwiktag®      022 604 821

4. $  12,976.52    SUBTOTAL

By: _____    Dated: 5/24/05

Senior Administrative Supervisor, Office of Central Administration

5. **OTHER REASONABLE COSTS OF THE STATE BAR COURT**

$ 00.00    _____
$ 00.00    _____

$  12,976.52    **TOTAL OF ALL COSTS**

By: _____    Dated: 2/8/06

Deputy Court Clerk, Office of the State Bar Court

# CERTIFICATE OF SERVICE
### [Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Deputy Court Clerk of the State Bar Court. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice in the City and County of Los Angeles, I deposited a true copy of the following document(s):

### CERTIFICATE OF COSTS

in a sealed envelope for collection and mailing on that date as follows:

[X]    by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

**PADAM KUMAR KHANNA**
**KHANNA & NARAIN**
**2600 10TH ST**
**BERKELEY CA 94710-2522**

[X]    by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

**TAMMY M ALBERTSEN-MURRAY, Enforcement, San Francisco**

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on **February 8, 2006**.

**Sonia Sotomayor**
Deputy Court Clerk
State Bar Court

EXHIBIT 'FFF'

**DTDC**
WORLDWIDE EXPRESS LTD.

CORPORATE OFFICE "DTDC HOUSE", 3 Victoria Road, Bangalore - 560 047
Tel: 080-5593933/5369039 Fax: 080-5593949 E-mail: dtdc@vsnl.com Website: www.dtdc.com

INDIA

**DESTINATION**
USA

| Shipper/Consignor | Receiver/Consignee | |
|---|---|---|
| CHITER S CHANNA ADVOCATE SUPREME COURT OF INDIA VOYACHERY | ALICE VERSTEGEN ATTORNEY, SPECIAL IMMONEY THE STATE BAR OF CALIFORNIA | |

Origin Office Code

Shipper's A/c No.

| City | C 14 (BY) Post/Zip Code | City | LOS ANGELES Post/Zip Code |
|---|---|---|---|
| Country | INDIA | Country | CALIFORINIA |
| Contact Name | | Contact Name | |
| Telephone No. | 91-44-52-1956 | Telephone No. | 90015-2299 |

Description of Contents (including packing and marks)

17/9/2003

**AIRWAY BILL**

```
*I90179750*
```

| No. of pieces | | Courier Charges | |
|---|---|---|---|
| Actual Weight | | Special Charges | 650 - |
| Volume Weight | 500 gms | Service Tax 5% | 19 - |
| Weight Charges | | TOTAL | 669 - |

**Received in good order and condition**

Print Name

Date

Time        AM/ PM

Receiver's Signature

| Dimensions of Consignment (CM³) | | | |
|---|---|---|---|
| Length in CM³ | Breadth in CM³ | Height in CM³ | Volume in CM³ |

Print Name :

Date :

Shipper's Signature

Received by DTDC Worldwide Express Limited

Date : 17/09/3
Time :        AM-PM

**SHIPPER'S COPY**

EXHIBIT GGG

# BERKELEY CARDIOVASCULAR MEDICAL GROUP

Alta Bates Medical Center • 2450 Ashby Ave. • Berkeley • California • 94705
(510) 204-1691 • 2nd Floor • FAX (510) 204-5422

Richard P. Bails, M.D., F.A.C.C.
John S. Edelen, M.D., F.A.C.C.
Robert M. Greene, M.D., F.A.C.C
J. Daniel Hill, Jr., M.D., F.A.C.C.
George Horvath, M.D.

Luisa Muñoz, M.D., Ph.D.
Duane D. Stephens, M.D., F.A.C.C.
Michael W. Tsang, M.D.
Samuel Wang, M.D., F.A.C.C.

November 8, 2004

To Whom It May Concern:

Re: Padam Khanna

Mr. Padam K. Khanna, who is a 68 years old, has been under my care for about ten years. He had been diagnosed with intermittent rapid atrial fibrillation. This diagnosis causes dizziness, light-headedness and fainting.

Mr. Khanna stated to me that on August 18, 2004 at around 2:00 pm while undergoing a very strenuous trial in San Francisco, he had an episode of this arrhythmia. This caused very rapid heart rate, lightheadedness, drowsiness, disorientation and inability to continue to work. Thereafter, he took his prescribed medications but continued to experience symptoms for the next twenty-four hours. Such symptoms occur when he is under stress. If not treated immediately, it can lead to low blood pressure, dizziness or even unconsciousness. His inability to perform his work properly on August 19, 2004 is consistent with the health condition he suffers from.

Respectfully,

John S. Edelen, M.D., F.A.C.C.

zaac

**EXHIBIT I**

SUPREME COURT
F I L E D

JUN 2 1 2006

Frederick K. Ohlrich Clerk

DEPUTY

S141019
S.B.C. No. 02-O-11383

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re PADAM KUMAR KHANNA on Discipline

Petition for writ of review denied.

It is hereby ordered that **PADAM KUMAR KHANNA, State Bar No. 85229,** be disbarred from the practice of law and that his name be stricken from the roll of attorneys.  Respondent is also ordered to comply with rule 955 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the date this order is effective.*  Costs are awarded to the State Bar.

*(See Bus. and Prof. Code, § 6126, subd. (c).)

GEORGE

Chief Justice