1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8    PADAM KUMAR KHANNA,                        No. C-07-2587 EMC

9              Plaintiff,

10        v.                                    **ORDER GRANTING DEFENDANTS'
                                                MOTION TO DISMISS**
11   STATE BAR OF CALIFORNIA, *et al.*,
                                                **(Docket No. 5)**
12             Defendants.
     _____/

13

14

15        Plaintiff Padam Kumar Khanna has filed suit against Defendants the State Bar of California,

16   Pat McElroy (a judge for the State Bar Court), Tammy Albertsen-Murray (deputy trial counsel for

17   the State Bar), and Alice Verstegen (an investigator for the State Bar).  According to Mr. Khanna,

18   Defendants violated his constitutional rights including his right to a fair trial, due process, equal

19   protection, and counsel.  *See* 42 U.S.C. § 1983.  Currently pending before the Court is Defendants'

20   motion to dismiss.  Defendants argue that the motion should be granted because, among other things,

21   they are protected by Eleventh Amendment and judicial/quasi-judicial immunity.

22        Having considered the parties' briefs and accompanying submissions, as well as the oral

23   argument of counsel, the Court hereby **GRANTS** Defendants' motion to dismiss.

24                   I.    **FACTUAL & PROCEDURAL BACKGROUND**

25        According to Mr. Khanna, he practiced law in the state of California from 1979 to 2004,

26   when he was involuntarily disbarred.  *See* Compl. ¶ 20 & Ex. 2 (State Bar Court decision, dated

27   10/21/04).  Mr. Khanna was disbarred based on a complaint made by Jagit Singh Randhawa and

28

United States District Court

For the Northern District of California

Baljit Randhawa (husband and wife), whom he represented in 1996 and 1997. *See id.* ¶¶ 27, 29. The complaint was made on November 19, 2001. *See id.* ¶ 29.

The State Bar initiated proceedings against Mr. Khanna on June 25, 2003. *See id.*, Ex. 2, at 2 (State Bar Court decision, dated 10/21/04). On October 20, 2004, Judge McElroy, a judge for the State Bar Court, issued a decision recommending that Mr. Khanna be disbarred based on, *inter alia*, a finding that Mr. Khanna misappropriated from the Randhawas $31,000. *See id.*, Ex. 2, at 13. According to Judge McElroy, the Randhawas gave Mr. Khanna $31,000 to invest in an Indian company, Amerindia Foods Limited ("AFL"), which never even existed. *See id.*, Ex. 2, at 4-11, 13 (concluding that Mr. Khanna "engaged in a scheme to defraud the Randhawas out of their money by luring them to invest in a nonexistent company and then spent their money on his personal expenses").

Importantly, the recommendation of the State Bar Court is not a dispositive ruling disbarring members. It is a recommendation to the California Supreme Court which makes the ultimate decision *de novo*. *See In re Rose*, 22 Cal. 4th 430, 436 (2000) ("The State Bar Court exercises no judicial power, but rather makes recommendations to this court [*i.e.*, the California Supreme Court], which then undertakes an independent determination of the law and the facts, exercises its inherent jurisdiction over attorney discipline, and enters the first and only disciplinary order."). In this case, after the State Bar Court issued its recommendation, Mr. Khanna filed a petition for review with the California Supreme Court challenging the recommendation. *See* Def.'s RJN, Ex. H (petition for review).[1] On June 21, 2006, the California Supreme court rejected his petition and issued an order disbarring Mr. Khanna. *See id.*, Ex. I (order, filed 6/21/06).

---

[1] Defendants have asked the Court to take judicial notice of papers and orders filed in the State Bar Court and California Supreme Court proceedings. The Court hereby grants the request. Mr. Khanna has not opposed the request for judicial notice; moreover, it is appropriate for the Court to take judicial notice of such documents. *See, e.g.*, *United States ex rel. Robinson Rancheria Citizens Council*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of "directly related" and potentially "dispositive" state court proceedings, even where information was not before the district court, when reviewing district court grant of motion to dismiss).

**United States District Court**
For the Northern District of California

1     Mr. Khanna's complaint herein is brought against the State Bar and employees involved in

2  the investigation and hearing, but not against the California Supreme Court.  He asserts the

3  following causes of actions:

4  (1)     Violation of the Fifth Amendment (the right to a fair trial).

5          (a)     According to Mr. Khanna, he was deprived of the right to a fair trial because Judge

6                  McElroy (1) deliberately erased from the recorded CDs of the trial proceedings over

7                  100 minutes of testimony by Mr. Randhawa on cross-examination, *see* Compl. ¶ 53,

8                  and (2) found Mr. Randhawa's testimony credible even though Mr. Randhawa

9                  admitted to making false statements in his complaint to the State Bar and even though

10                 there were obvious lies and contradictions in his testimony.  *See id.* ¶ 57.

11         (b)     According to Mr. Khanna, he was further deprived of the right to a fair trial because

12                 Ms. Verstegen, an investigator for the State Bar, committed perjury when (1) she

13                 denied ever having received responses to her letter inquiries to AFL and (2) she

14                 claimed that a letter that she did receive from AFL was not delivered by mail but

15                 "mysteriously appeared at her desk." *Id.* ¶ 59; *see also id.*, Ex. 2, at 10-11 (State Bar

16                 Court decision, dated 10/20/04) (stating that a "suspicious letter [from Mr. Khanna's

17                 brother, the purported chairman of AFL,] was delivered to the State Bar in an

18                 envelope without any postage markings and Verstegen was never able to track down

19                 its origin of mailing"; concluding that Mr. Khanna "somehow had the letter delivered

20                 to the State Bar and not necessarily from India").

21         (c)     According to Mr. Khanna, he was also denied a right to a fair trial because (1) the

22                 proceedings before the State Bar Court "took five and one half years to complete," *id.*

23                 ¶ 62, and (2) the State Bar Court proceedings took place without a court reporter and

24                 instead were only recorded.  *See id.* ¶ 60.

25         (d)     Finally, according to Mr. Khanna, he was denied a right to a fair trial because the

26                 Notice of Disciplinary Charges stated only that the Randhawas gave him $25,000 to

27                 invest in AFL.  *See id.* ¶ 64.  It was a "complete surprise to [Mr. Khanna]" when Ms.

28

1    Albertsen-Murray "had the witness Jagjit [Randhawa] testify that he gave another

2    $6,000 to [Mr. Khanna, for a total of $31,000]." *Id.*

3  (2)    Violation of the Fourteenth Amendment (the right to due process).

4      (a)    It appears that Mr. Khanna is making both a procedural due process claim and a

5        substantive due process claim.  With respect to procedural due process, he asserts that

6        his rights were violated because the California Supreme Court did not give him a

7        judicial hearing to challenge the State Bar Court decision and provided him with only

8        a summary written opinion.  *See id.* ¶ 67.

9      (b)    With respect to substantive due process, Mr. Khanna asserts that his rights were

10        violated because "neither the California Legislature nor the Supreme Court has

11        authorized a trial judge of the State Bar to suspend an attorney and take away his

12        right to make a living." *Id.* ¶ 66.  Mr. Khanna further asserts that his rights were

13        violated because the State Bar Court's finding that he misappropriated $25,000 was

14        not supported by the evidence.  *See id.* ¶ 68 (noting that there was a letter from AFL

15        which stated that the Randhawas had deposited ten lakhs of Indian rupees with the

16        company for investment).

17  (3)    Violation of 42 U.S.C. § 1985(2) (conspiracy to interfere with civil rights).

18      (a)    According to Mr. Khanna, Ms. Albertsen-Murry (the prosecutor) and Ms. Verstegen

19        (the investigator) "conspired to destroy, spoliate and hide [an] exculpatory [letter]

20        from the trial judge." *Id.* ¶ 71.  The exculpatory letter is the letter from Mr. Khanna's

21        brother.  The State Bar Court judge did not find the letter to be exculpatory, stating

22        that a "suspicious letter [from Mr. Khanna's brother, the purported chairman of

23        AFL,] was delivered to the State Bar in an envelope without any postage markings

24        and Verstegen was never able to track down its origin of mailing" and concluding

25        that Mr. Khanna "somehow had the letter delivered to the State Bar and not

26        necessarily from India." *Id.*, Ex. 2, at 10-11 (State Bar Court decision, dated

27        10/20/04).

28  (4)    Violation of the Fourteenth Amendment (the right to equal protection).

4

United States District Court

For the Northern District of California

1    (a)    According to Mr. Khanna, the "State Bar Court proceedings violated [his] right to

2            equal protection . . . in that [he] was tried for an act constituting *moral turpitude*." *Id.*

3            ¶ 74 (emphasis in original).

4  (5)    Violation of 18 U.S.C. § 1621 (perjury).

5    (a)    According to Mr. Khanna, Ms. Verstegen (the investigator) committed perjury when

6            (1) she denied ever having received responses to her letter inquiries to AFL and (2)

7            she claimed that a letter that she did receive from AFL was not delivered by mail but

8            "mysteriously appeared at her desk." *Id.* ¶ 86.

9  (6)    Violation of the Sixth Amendment (the right to counsel).

10   (a)    According to Mr. Khanna, his Sixth Amendment right to counsel was violated

11           because he was not given the opportunity to have an attorney represent him in a case

12           in which he was being tried for moral turpitude.

13       Based on the above claims, Mr. Khanna seeks compensatory damages in the amount of

14 $2,000,000 as well as punitive damages. *See id.* ¶¶ 95-97. Mr. Khanna does not seek, as ultimate

15 relief, an injunction overturning the decision of the California Supreme Court and reinstating his

16 membership in the bar. While, in his complaint, Mr. Khanna did ask that the Court direct the

17 California Supreme Court to reinstate him as an active and honorable member of the State Bar until

18 this case is decided, *see id.* ¶ 91, Mr. Khanna withdrew this request for provisional relief at the

19 hearing on the motion to dismiss.[2]

20                        **II.    DISCUSSION**

21       In their motion to dismiss, Defendants make several arguments as to why the case should be

22 dismissed. First, they argue that the State Bar is immune from suit under the Eleventh Amendment

23 and that the State Bar employees are immune under the Eleventh Amendment when sued in their

24 official capacities. As for the claims against the employees in their individual capacities,

25 Defendants maintain that the employees are protected by judicial or quasi-judicial immunity.

26 _____

27       [2] In his complaint, Mr. Khanna also asked that the Court direct the State Bar not to destroy logs
28 of its incoming mail and fax registry for the period of August 11-October 11, 2003. *See* Compl. ¶¶ 93-
94.

**United States District Court**

For the Northern District of California

1    Second, Defendants contend argue that the *Rooker-Feldman* doctrine bars Mr. Khanna's claims.

2    Third, Defendants assert that Mr. Khanna's claims are barred under res judicata and collateral

3    estoppel grounds.  Finally, Defendants argue that Mr. Khanna has failed to state a claim for relief.

4    A.    *Rooker-Feldman*

5         Where federal constitutional violations are asserted, federal question jurisdiction usually

6    vests under 28 U.S.C. § 1331.  *Rooker-Feldman* creates an exception which arises out of a negative

7    inference from 28 U.S.C. § 1257, the statute that grants jurisdiction to review a state court judgment

8    to the United States Supreme Court only, and not, *e.g.*, a federal district court.

9         "The *Rooker-Feldman* doctrine stands for the proposition that 'a federal district court does

10   not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.'"

11   *Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d 1022, 1029 (9th Cir. 2005)

12   [hereinafter *MHC*].  As the Ninth Circuit has explained, *Rooker-Feldman* prohibits a federal district

13   court from exercising jurisdiction over a suit that is a "de facto appeal from a state court judgment."

14   *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).  Of course, "[d]etermining what

15   constitutes a forbidden de facto appeal . . . has something proven difficult for the lower courts."  *Id.*

16        In *Noel v. Hall*, 341 F.3d 1148, 1159-61 (9th Cir. 2003), the Ninth Circuit provided guidance

17   as to what constitutes a forbidden de facto appeal.  In that case, the court cautioned that the *Rooker-*

18   *Feldman* doctrine needs to be narrowly construed.  Two well-established rules would be in tension

19   with an overly broad reading of *Rooker-Feldman*:  (1) the rule that overlapping or even identical

20   federal and state court litigation may proceed simultaneously, limited only by the doctrines of

21   abstention and comity and (2) the prescribed preclusive effect that federal courts give to state court

22   judgments under 28 U.S.C. § 1738.  *See id.* at 1160 (noting that the Supreme Court "has never

23   construed the *Rooker-Feldman* doctrine to give greater preclusive effect to a state council judgment

24   . . . than a judgment would have under § 1738").  Accordingly, a federal district court action "is a

25   forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in the federal district court

26   complaint of a legal wrong allegedly committed by the state court and seeks relief from the

27   judgment of that court."  *Id.* at 1163.  Where "the federal plaintiff does not complain of a legal injury

28

**United States District Court**

For the Northern District of California

1  caused by a state court judgment, but rather of a legal injury caused by an adverse party," *Rooker-*

2  *Feldman* does not apply.  *Id.*

3      The Ninth Circuit's holding in *Noel* was reaffirmed in *Kougasian*, where the court

4  emphasized that, for *Rooker-Feldman* to apply, the federal plaintiff must seek to set aside the

5  judgment of the state court.  *See Kougasian*, 359 F.3d at 1139-40.  In neither *Noel* nor *Kougasian*

6  did the federal plaintiff seek such relief.   In *Noel*, the federal plaintiff had complained of illegal acts

7  committed by a party against whom he had previously litigated (*e.g.*, wiretapping, breach of

8  partnership fiduciary duties).  In *Kougasian*, the federal plaintiff complained that defendants

9  obtained state court judgments by extrinsic fraud.  In both cases, the Ninth Circuit held that *Rooker-*

10  *Feldman* did not bar jurisdiction, but instead left the matters to traditional claim preclusion analysis,

11  because *Rooker-Feldman* applies only when the federal plaintiff both "asserts as her injury legal

12  error or errors by the state courts *and* seeks as her remedy relief from the state court judgment."  *Id.*

13  at 1140 (emphasis in original).

14      More recently, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the

15  Supreme Court, consistent with the Ninth Circuit's interpretation of *Rooker-Feldman*, emphasized

16  that the doctrine was limited in scope, being "confined to . . . cases brought by state-court losers

17  complaining of injuries caused by state-court judgments rendered before the district court

18  proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at

19  284.  The Court pointed out that, in both *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and

20  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the two cases that gave rise

21  to the doctrine, the plaintiffs were directly challenging a state court judgment.  *See Exxon*, 544 U.S.

22  at 284-85 (noting that, in *Rooker*, the plaintiffs alleged that the "adverse state-court judgment was

23  rendered in contravention of the Constitution" and so should be declared "'null and void'"; and that,

24  in *Feldman*, the plaintiffs were, in part, directly challenging a state court's denial of their petitions

25  seeking waiver of a rule that required bar applicants to have graduated from an ABA-approved law

26  school).  Each plaintiff in *Rooker* and *Feldman* "called upon the District Court to overturn an

27  injurious state-court judgment."  *Id.* at 291-92.

28

**United States District Court**
For the Northern District of California

1    Notably, in prescribing the narrow scope of the *Rooker-Feldman* doctrine, the Court

2   emphasized that *Rooker-Feldman* does *not* displace concurrent state and federal jurisdiction over

3   parallel cases or normal preclusion law under § 1738.  *See id.* at 292-93.  As to preclusion law

4   specifically, the Supreme Court noted that § 1257, which underpins *Rooker-Feldman*, does not "stop

5   a district court form exercising subject matter jurisdiction simply because a party attempts to litigate

6   in federal court a matter previously litigated in state court.  *Id.* at 293.  Hence, *Rooker-Feldman* is

7   limited to cases in which federal plaintiff seeks "review and rejection of [the state-court] judgment,"

8   and calls "upon the District Court to overturn an injurious state-court judgment."  *Id.* at 291-92.

9    *Exxon Mobil's* pronouncement on the limited scope of *Rooker-Feldman* was re-emphasized

10   in a subsequent *per curiam* holding in *Lance v. Dennis*, 546 U.S. 459 (2006).  There, the Supreme

11   Court reiterated that the doctrine does not supplant Congress's conferral of federal court jurisdiction

12   concurrent with jurisdiction exercised by state courts and ordinary application of preclusion law.

13   *See id.* at 464.  In concurring, Justice Stevens emphasized that, "in *Exxon Mobil*, the Court, finally

14   interred the so-called *Rooker Feldman* doctrine."  *Id.* at 468 (Stevens, J., concurring).

15    If the Ninth Circuit's interpretation of *Rooker-Feldman* in *Noel* and *Kougasian* left any

16   doubt, it is now clear after *Exxon Mobil* and *Lance* that the *Rooker-Feldman* doctrine does not apply

17   unless the federal plaintiff seeks to "overturn an injurious state-court judgment."  *Exxon Mobil*, 544

18   U.S. at 292.  *Rooker-Feldman* does not bar jurisdiction simply because there is concurrent

19   state/federal jurisdiction or where normal preclusion rules apply.  The fact that state and federal suits

20   involve overlapping issues or could result in inconsistent factual findings is not sufficient.   For

21   *Rooker-Feldman* to apply, there must be a frontal, not collateral, attack upon the state court

22   judgment.

23    In the case at bar, the requisite to *Rooker-Feldman* is not met.  Mr. Khanna does not seek

24   relief from the order of the California Supreme Court disbarring him.  Unlike the plaintiff in

25   *Feldman*, he does not seek readmission or reinstatement to the bar.  Rather, Mr. Khanna seeks

26   money damages from individuals and the State Bar for alleged wrongs committed by these actors

27   against him.  His attack is collateral, not frontal, in that he does not seek to "overturn an injurious

28   state-court judgment."  *Id.*  The fact that M. Khanna seeks a result which would be based upon

**United States District Court**
For the Northern District of California

1  findings inconsistent with those underpinning the California Supreme Court's decision implicates

2  conventional preclusion rules (as discussed below), not a lack of jurisdiction.

3       Moreover,  Mr. Khanna does not assert as a legal wrong an erroneous decision of the

4  California Supreme Court, but rather the illegal acts of other parties -- the named defendants herein.

5  *See MHC*, 420 F.3d at 1030 (*Rooker-Feldman* is applicable where the state court is sued for its

6  actions, not those of an adverse party).  This case is thus far more analogous to *Kougasian* where

7  there were allegations of extrinsic fraud on the court rather than *Feldman* in which the final

8  judgment of the District of Columbia court was directly challenged.

9       Defendants rely on *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602 (9th Cir.

10 2005), in asserting that *Rooker-Feldman* applies to the instant case.  But the case does not support

11 their position.  In *Mothershed*, the Ninth Circuit applied the *Rooker-Feldman* doctrine to bar the

12 claims of a federal plaintiff -- a disbarred attorney -- who was seeking to challenge the state bar

13 disciplinary proceedings leading to his disbarment.  *See id.* at 604.  The plaintiff was an attorney

14 licensed by the Oklahoma Bar Association who lived and practiced in Arizona.  *See id.*  The State

15 Bar of Arizona initiated disciplinary proceedings against the plaintiff on the basis that he had

16 unlawfully practiced law in Arizona.  *See id.*  A default judgment was entered against the plaintiff

17 and the plaintiff was censured for engaging in the unauthorized practice of law.  *See id.* at 605.

18 Thereafter, the Oklahoma Bar Association initiated its own disciplinary proceedings against the

19 plaintiff.  A trial panel found that the plaintiff had unlawfully practiced law in Arizona, and the

20 Oklahoma Supreme Court entered an order disbarring him.  *See id.*

21      Subsequently, the plaintiff filed suit in the federal district court in Arizona against the

22 justices of the Arizona and Oklahoma Supreme Courts as well as various employees of the state bar

23 associations.  *See id.*  The plaintiff asserted a claim under 42 U.S.C. § 1983 for due process and

24 other constitutional violations, as well as state law tort claims for interference with contractual

25 relationships, defamation, abuse of process, malicious prosecution, false light, and intentional

26 infliction of emotional distress.  *See id.*  He sought "damages totaling more than $330 million and an

27 injunction reinstating his membership in the Oklahoma Bar Association and prohibiting the

28 defendants from interfering with his Arizona law practice."  *Id.*  The Ninth Circuit held that, under

1   *Rooker-Feldman*, the district court lacked subject matter jurisdiction to review the Oklahoma

2   disciplinary proceedings.  It further held that the *Rooker-Feldman* doctrine barred the plaintiff's

3   § 1983 and state tort law claims against the Arizona defendants.  *See id.* at 607-08.

4        *Mothershed* is entirely consistent with *Noel*, *Kougasian*, *Exxon Mobil*, and this Court's

5   analysis herein.  In  *Mothershed*, the plaintiff sued the justices of the Arizona and Oklahoma

6   Supreme Courts and sought injunctive relief from the judgments of the Arizona and Oklahoma state

7   courts.  He sought reinstatement.  He thus sought "relief  from the state court judgment," *Kougasian*,

8   359 F.3d at 1140, and to "overturn an injurious state-court judgment."  *Exxon Mobil*, 544 U.S. at

9   292.  To be sure, the plaintiff in *Mothershed* also asserted damage claims against the other parties.

10  However, those additional claims, although "inextricably intertwined" with the claim for relief

11  against the Arizona and Oklahoma state courts, were not the basis for finding that the federal suit

12  contained a forbidden de facto appeal.  As the Ninth Circuit explained in *Noel*,

13           [a] federal district court, dealing with a suit that is, in part, a forbidden
             de facto appeal must refuse to hear the forbidden appeal.  As part of
14           that refusal, it must also refuse to decide any issue raised in the suit
             that is 'inextricably intertwined' with an issue resolved by the state
15           court in its judicial decision.

16  *Noel*, 341 F.3d at 1158.  The fact that issues raised in federal court may be described as "inextricably

17  intertwined" with issues already decided in state court was not the basis for finding a jurisdictional

18  bar under *Rooker-Feldman*.  *See Kougasian*, 359 F.3d at 1142-43.  As *Kougasian* had made clear,

19  the "inextricably intertwined" analysis does not come into play unless and until a jurisdictional bar

20  is found under *Rooker-Feldman* -- that analysis determines the scope, not the existence, of the

21  *Rooker-Feldman* bar.  *Id.*  Because the equitable relief sought in *Kougasian* invoked *Rooker-*

22  *Feldman*, the intertwining claims for damages was barred as well.  In the instant case, no *Rooker-*

23  *Feldman* bar obtains at all.

24        Accordingly, the Court concludes that *Rooker-Feldman* does not bar any of the claims

25  against Defendants.  Because *Rooker-Feldman* does not apply, the Court has subject matter

26  jurisdiction over Mr. Khanna's claims and must now turn to the other arguments raised by

27  Defendants.

28

B.     Eleventh Amendment Immunity and Judicial/Quasi-Judicial Immunity

1.     State Bar

Defendants argue first that all claims against the State Bar must be dismissed based on the Eleventh Amendment.  In the absence of consent, a suit in federal court against a state or one of its agencies or departments is proscribed by the Eleventh Amendment.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  The Ninth Circuit has held that the State Bar is an arm of the state; accordingly, it is entitled to Eleventh Amendment immunity.  *See Hirsh v. Justices of the Supreme Court of the State of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) ("The Eleventh Amendment's grant of sovereign immunity bars monetary relief from state agencies such as California's Bar Association and Bar Court."); *see also Allegrino v. State Bar of Cal.*, Nos. C06-05490 MJJ, C07-00301 MJJ, 2007 U.S. Dist. LEXIS 40155, at *11 (N.D. Cal. May 14, 2007) (dismissing all claims against the State Bar based on Eleventh Amendment immunity).

Mr. Khanna contends that the State Bar is not an arm of the state, citing *Keller v. State Bar of California*, 496 U.S. 1 (1990).  However, this argument was rejected by Judge Jenkins in *Konig v. State Bar of California*, No. C 04-2210 MJJ, 2004 U.S. Dist. LEXIS 19498 (N.D. Cal. Sept. 16, 2004), for reasons this Court finds persuasive.  In *Konig*, Judge Jenkins acknowledged that "there is considerable debate over what type of entity the State Bar is in the context of other constitutional and statutory claims," but noted that both the Ninth Circuit and other judges in this District "have held that the Eleventh Amendment applies to the State Bar." *Id.* at *7 (citing cases, including *Hirsh*).  With respect to *Keller*, Judge Jenkins explained that "the case has no relevance in the context of Eleventh Amendment sovereign immunity.  *Keller* is a First Amendment freedom of speech and association case.  The case does not hold, or even suggest, that the State Bar is not entitled to immunity." *Id.* at *9-10.  Whether First Amendment rights and restrictions which obtain in the context of, *e.g.*, unions under *Abood v. Detroit Board of Education*, 431 U.S. 209 (177), apply to the State Bar is a question entirely independent of whether the State Bar is an arm of the state for Eleventh Amendment purposes.

Accordingly, all claims against the State Bar are dismissed with prejudice.

2.    State Bar Employees

      a.    Official Capacity

The Eleventh Amendment "bars a federal action for damages, or other retroactive relief, against a state official acting in his or her official capacity." *Allegrino*, 2007 U.S. Dist. LEXIS 40155, at *11; *see also Hirsh*, 67 F.3d at 715 ("[The Eleventh Amendment] immunity extends to the individual defendants [*e.g.*, the Bar Court judges and prosecutors involved] acting in their official capacities."). Accordingly, the State Bar employees have Eleventh Amendment immunity from suit in their official capacities for monetary damages and other retroactive relief.

It is true that, for prospective relief, a state official acting in his or her official capacity may be sued despite the Eleventh Amendment. *See Allegrino*, 2007 U.S. Dist. LEXIS 40155, at *12. However, Defendants are correct that Mr. Khanna does not seek prospective relief. He seeks damages. The fact that in his complaint he also seeks a discovery-type order prohibiting the destruction of evidence does not change the fundamental nature of the relief he seeks in this action. *See, e.g.*, Compl. ¶¶ 93-94 (asking the Court to direct the State Bar "not to destroy logs of its incoming mail [and fax] registry from the period of August 11, 2003 to October 11, 2003").

Nor does the fact that Mr. Khanna sought provisional relief that the California Supreme Court "reinstate [him] as an active and honorable member of the State Bar of California till [sic] this case is decided" make this case one involving prospective relief. *Id.* ¶ 91. As noted above, this relief was specifically disavowed by Mr. Khanna at the hearing on the motion to dismiss. *See also* Opp'n at 7 (stating that "plaintiff is NOT challenging California Supreme Court's order of disbarment before this Court").

Accordingly, all claims against the State Bar employees in their official capacity are dismissed with prejudice as barred by the Eleventh Amendment.

      b.    Individual Capacity

While the official capacity claims should be dismissed because of Eleventh Amendment immunity, the Eleventh Amendment does not bar Mr. Khanna's claims against the State Bar employees in their individual capacities. *See Allegrino*, 2007 U.S. Dist. LEXIS 40155, at *14. That does not mean, of course, that the individuals may be immune from suit for other reasons.

**United States District Court**

For the Northern District of California

1   Defendants contend that all of the State Bar employees have judicial or quasi-judicial immunity for

2   all claims.

3   Judicial immunity provides absolute immunity to a judicial officer, in exercising the

4   authority vested in him, because the judicial officer "[should] be free to act upon his own

5   convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435

6   U.S. 349, 355 (1978) (internal quotation marks omitted); *see also Forrester v. White*, 484 U.S. 219,

7   226-27 (1988) (summarizing the rationales for judicial immunity). "[J]udicial immunity is not

8   overcome by allegations of bad faith or malice." *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). In

9   *Hirsh*, the Ninth Circuit concluded that State Bar Court judges and prosecutors had "quasi-judicial

10   immunity from monetary damages," although it stated that this was only to the extent that "they

11   perform[ed] functions similar to judges and prosecutors in a setting like that of a court." *Hirsh*, 67

12   F.3d at 715.

13                              i.      Judge McElroy

14   In the instant case, Judge McElroy is entitled to judicial or quasi-judicial immunity for all

15   claims against her. All of the acts with which she is charged were taken in her judicial capacity --

16   *e.g.*, erasing a recording of part of the State Bar Court proceedings, crediting Mr. Randhawa's

17   testimony, and denying Mr. Khanna the right to obtain counsel. *See Mireles*, 502 U.S. at 12-13

18   (explaining that whether a judge's act is a judicial one relates to the nature of the act, *i.e.*, whether it

19   is a function normally performed by a judge; adding that "we look to the particular act's relation to a

20   *general* function normally performed by a judge" and not the particular act itself) (emphasis added).

21   Mr. Khanna's claims against Judge McElroy are, in essence, that she was doing all that she could to

22   decide the case in a particular way -- *i.e.*, against him -- but the Ninth Circuit has held that even a

23   "conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding,

24   while clearly improper, nevertheless does not pierce the immunity extended to judges and

25   prosecutors." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986).

26                              ii.      Ms. Albertsen-Murray

27   As for Ms. Albertsen-Murray, the prosecutor, she should have quasi-judicial immunity but

28   only for those acts in which she performed a prosecutorial function. Defendants' suggestion that

**United States District Court**

For the Northern District of California

1  *Hirsh* provides for an immunity different from the absolute prosecutorial immunity, *see* Reply at 5,

2  is not well supported.  The Supreme Court has explained that "courts sometimes have described the

3  prosecutor's immunity as a form of 'quasi-judicial' immunity and referred to it as derivative of the

4  immunity of judges." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *see also* Schwartz & Kirklin,

5  Section 1983 Litigation § 9.05[B] (stating that "[a]bsolute prosecutorial immunity is justified only

6  when the prosecutor acts in an advocacy role exercising quasi-judicial power").  Moreover, as noted

7  above, in *Hirsh*, the Ninth Circuit concluded that State Bar Court prosecutors had "quasi-judicial

8  immunity from monetary damages" only to the extent that "they perform[ed] functions similar to . . .

9  prosecutors in a setting like that of a court." *Hirsh*, 67 F.3d at 715

10        In his opposition, Mr. Khanna identifies with specificity only two acts taken by Ms.

11  Albertsen-Murray that were wrongful, *see* Opp'n at 9: (1) her suborning of perjury by the

12  Randhawas, *see* Compl. ¶ 12, and (2) her conspiring with the investigator, Ms. Verstegen, "to

13  destroy, spoliate and hide [an] exculpatory [letter] from the trial judge." *Id.* ¶ 71.  Taking all

14  allegations in the complaint as true and drawing all inferences from the complaint in Mr. Khanna's

15  favor, *see Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005), the Court concludes that the

16  alleged acts of suborning perjury and conspiring to destroy exculpatory evidence are not protected

17  by absolute prosecutorial immunity.  As the Third Circuit has acknowledged, "there may well be

18  situations in which the allegations [of a complaint] establish that the solicitation or coercion of false

19  statements from a witness occurred while the prosecutor was acting in an investigative capacity."

20  *Rose v. Bartle*, 871 F.2d 331, 344-45 (3d Cir. 1989).  In addition, a prosecutor's destruction of

21  exculpatory evidence is not related to the prosecutorial function because, "'while deciding not to

22  furnish the prosecution's evidence to the defense may be an act of advocacy, throwing the evidence

23  away is not.'"[3] *Yarris v. County of Del.*, 465 F.3d 129, 136-37 (3d Cir. 2006) (quoting *Wilkinson v.

24  Ellis*, 484 F. Supp. 1072, 1083 (E.D. Pa. 1980)).

25

26  _____

27        [3] To the extent Mr. Khanna alleges that the exculpatory letter (or at least its packaging) was
simply withheld by Ms. Albertsen-Murray, that act is clearly protected.  *See Imbler*, 424 U.S. at 431
28  n.34 (1976) (concluding that not only prosecutor's role in allegedly suborning perjury but also
prosecutor's "deliberate withholding of exculpatory information" were shielded by absolute immunity).

**United States District Court**
For the Northern District of California

iii.    Ms. Verstegen

Finally, taking all allegations in the complaint as true and drawing all reasonable inferences therefrom in Mr. Khanna's favor, the Court concludes that Ms. Verstegen, the investigator, is not entitled to absolute immunity for the destruction of of the exculpatory evidence for the reasons stated above. *See* Schwartz & Kirklin, Section 1983 Litigation § 9.05[K] ("[U]nder the functional approach, the immunity to which the investigator is entitled should depend upon an assessment of whether the contested activities were quasi-prosecutorial as opposed to administrative or investigative . . . ."); *see also Briscoe v. LaHue*, 460 U.S. 325, 342 (1983) ("[O]ur cases clearly indicate that immunity analysis rests on functional categories, not on the status of the defendant.").

However, for Ms. Verstegen's alleged act of perjury, committed during the State Bar Court proceedings, she is entitled to immunity under the common law. *See Briscoe*, 460 U.S. at 345-46 (concluding that a police officer has a common law witness immunity from a § 1983 claim that he gave perjured testimony at a criminal trial).

iv.    Summary

For the reasons stated above, all claims against Judge McElroy in her individual capacity are dismissed with prejudice. In addition, the claim against Ms. Verstegen (the investigator) in her individual capacity for an alleged act of perjury, committed during the State Bar Court proceedings, is also dismissed with prejudice. Ms. Albertsen-Murry and Ms. Verstegen are not entitled to judicial or quasi-judicial immunity with respect to the claims asserted against them in their individual capacities for acts committed in their investigative functions.

C.    Preclusion

Given the above analysis on Eleventh Amendment immunity, the only question remaining is whether the claims against Ms. Albertsen-Murray and Ms. Verstegen in their individual capacities are barred by res judicata or collateral estoppel.

To determine whether the State Bar Court recommendation, affirmed by the California Supreme Court, has any preclusive effect, the Court must look to California's law of preclusion. *See Gupta v. Thai Airways Int'l, LTD*, 487 F.3d 759, 765 (9th Cir. 2007) ("Whether a prior state court judgment precludes relitigation of an identical claim in federal court depends on the preclusion rules

1    of the state."); *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 872 n.4 (9th Cir. 2005) ("'In

2    determining whether a party should be estopped from relitigating an issue decided in a prior state

3    court action, the bankruptcy court must look to that state's law of collateral estoppel.'"); *see also* 28

4    U.S.C. § 1738.

5         Under California law,

6    > [t]he doctrine of res judicata gives certain conclusive effect to a former
   > judgment in subsequent litigation involving the same controversy.
7    > The doctrine has a double aspect. In its primary aspect, commonly
   > known as claim preclusion, it operates as a bar to the maintenance of a
8    > second suit between the same parties on the same cause of action. In
   > its secondary aspect, commonly known as collateral estoppel, [t]he
9    > prior judgment . . . operates in a second suit . . . based on a different
   > cause of actions an estoppel or conclusive adjudication as to such
10   > issues in the second action as were actually litigated and determined in
   > the first action. The prerequisite elements for applying the doctrine to
11   > either an entire cause of action or one or more issues are the same: (1)
   > A claim or issue raised in the present action is identical to a claim or
12   > issue litigated in a prior proceeding; (2) the prior proceeding resulted
   > in a final judgment on the merits; and (3) the party against whom the
13   > doctrine is being asserted was a party or in privity with a party to the
   > prior proceeding."

14

15   *People v. Barragan*, 32 Cal. 4th 236, 252-53 (2004) (emphasis and internal quotation marks

16   omitted); *see also Vandenberg v. Superior Court*, 21 Cal. 4th 815, 828 (1999) ("In its narrowest

17   form, res judicata precludes parties or their privies from relitigating a cause of action [finally

18   resolved in a prior proceeding]. But res judicata also includes a broader principle, commonly termed

19   collateral estoppel, under which an issue necessarily decided in [prior] litigation [may be]

20   conclusively determined as [against] the parties [thereto] or their privies . . . in a subsequent lawsuit

21   on a different cause of action.").

22        The Court concludes that collateral estoppel bars the remaining claims against Ms.

23   Albertsen-Murray and Ms. Verstegen in their individual capacities. *See Sasson*, 424 F.3d at 872 n.4

24   (noting that, under California law, collateral estoppel applies if (1) the issue sought to be precluded

25   from relitigation is identical to that decided in a former proceeding; (2) this issue was actually

26   litigated in the former proceeding; (3) this issue was necessarily decided in the former proceeding;

27   (4) the decision in the former proceeding was final and on the merits; and (5) the party against

28

United States District Court
For the Northern District of California

1   whom preclusion is sought must be the same as, or in privity with, the party to the former

2   proceeding").

3           First, the issues in the state proceeding and in the instant care are identical -- *i.e.*, whether

4   Ms. Albertsen-Murray suborned perjury and conspired with Ms. Verstegen to destroy exculpatory

5   evidence.  Notably, in his petition to the California Supreme Court from the State Bar Court

6   decision, Mr. Khanna explicitly argued that Ms. Albertsen-Murray "knew both [the Randhawas]

7   were committing and had committed perjury" and that "[s]he not only helped but rather encouraged

8   them to do so."  Def.'s RJN, Ex. H at 35 (petition to California Supreme Court).  Likewise, he

9   argued that exculpatory evidence had "intentionally [been] suppressed" by Ms. Albertsen-Murray

10  and Mr. Verstegen.  *Id.* at 31 (petition to California Supreme Court).

11          Second, the issues were actually litigated and necessarily decided in the state proceeding.

12  *See People v. Carter*, 36 Cal. 4th 1215, 1240 (2005) ("An issue is actually litigated [w]hen [it] is

13  properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined

14  . . . .") (emphasis and internal quotation marks omitted); *Bostick v. Flex Equipment Co., Inc.*, 147

15  Cal. App. 4th 80, 96 (2007) ("The necessarily decided requirement means only that the resolution of

16  the issue cannot have been entirely unnecessary to the judgment in the initial proceeding.") (internal

17  quotation marks omitted).  The issues were raised by Mr. Khanna in his petition to the California

18  Supreme Court and submitted for determination, and the issues were decided -- and necessarily

19  decided -- by the Supreme Court because it ordered that he be disbarred.  Although the Supreme

20  Court did not provide a detailed ruling, it is an unavoidable inference that Mr. Khanna's disbarment

21  was based on the finding that he had misappropriated funds from his clients -- *i.e.*, there was no

22  investment in AFL.  By finding that there was no investment in AFL, the California Supreme Court

23  necessarily accepted the Randhawas' testimony and therefore necessarily rejected Mr. Khanna's

24  argument that Ms. Albertsen-Murray had suborned perjury.  Furthermore, by implicitly finding that

25  there was no investment in AFL, the Supreme Court necessarily accepted Ms. Verstegen's testimony

26  that she never got a response from AFL and therefore necessarily rejected Mr. Khanna's argument

27  that Ms. Verstegen had perjured herself and conspired to destroy exculpatory evidence with Ms.

28  Albertsen-Murray.

United States District Court

For the Northern District of California

1    Third, the California Supreme Court's decision was final and on the merits. The ruling of the

2  California Supreme Court disbarring Mr. Khanna even though summary, is on the merits. *See Rose*,

3  22 Cal. 4th at 446-48 (indicating that the California Supreme Court's summary denial of a petition

4  for review of a State Bar Court disciplinary recommendation amounts to a judicial determination on

5  the merits); *see also Sandoval v. Superior Court*, 140 Cal. App. 3d 932, 936 (1983) ("The rules of

6  res judicata are applicable only when a final judgment is rendered. However, for purposes of issue

7  preclusion (as distinguished from merger and bar), final judgment includes any prior adjudication of

8  an issue in another action that is determined to be sufficiently firm to be accorded conclusive

9  effect.") (emphasis and internal quotation marks omitted). No appeal was taken to the United States

10  Supreme Court.

11    Finally, there need not be privity between the individual defendants and the State Bar in

12  order for the individual defendants to assert collateral estoppel against Mr. Khanna. *See Younger v.*

13  *Jensen*, 26 Cal. 3d 397, 409 (1980) ("[L]ike this court the United States Supreme Court has

14  abandoned the mutuality requirement."). Privity is only a concern with respect to the party *against*

15  whom preclusion is sought. *See Sasson*, 424 F.3d at 872 n.4 (stating that one of the elements of

16  collateral estoppel is that "the party against whom preclusion is sought must be the same as, or in

17  privity with, the party to the former proceeding"). There is no question here that Mr. Khanna, the

18  party against whom preclusion is sought, was a party in the prior state proceeding.

19    Mr. Khanna argues still that his claims cannot be precluded because of new evidence that he

20  has which demonstrates that AFL does exist. The new evidence consists of a complaint filed by

21  AFL against the Randhawas in an Indian Criminal Court, *see* Compl. ¶ 13, and a letter to the

22  Randhawas, written by AFL's counsel in India, notifying them that a civil suit against them was

23  about to be filed. *See id.* ¶ 16. Supporting documents for the criminal complaint include

24  photocopies of a certificate of incorporation for AFL and a share certificate issued by AFL to Mr.

25  Randhawa. The Court concludes that this new evidence does not prevent application of collateral

26  estoppel.

27    First, Mr. Khanna has failed to demonstrate that the most compelling of his new evidence --

28  in particular, the certificate of incorporation and the share certificate -- is actually new evidence or

evidence previously unavailable to him. *See Roos v. Red*, 130 Cal. App. 4th 870, 888 (2005) (rejecting challenge to collateral estoppel based on claim of new evidence because defendant's claimed new evidence was available to the defendant prior to the first proceeding). With reasonable diligence, Mr. Khanna should have been able to obtain AFL's certificate of incorporation and the share certificate in time for the State Bar Court proceedings since it is uncontested that his brother is the managing director of AFL. Moreover, it is notable that Mr. Khanna was able to get some support from his brother in time for the State Bar Court proceeding as evidenced by the putative exculpatory letter that his brother wrote which was sent to Ms. Verstegen.

Second, even if the new evidence was not previously available, under California case law, collateral estoppel will still apply if the new evidence goes only to the weight of the evidence in support of the party who opposes preclusion. For example, in *Roos v. Red*, 130 Cal. App. 4th 870 (2005), a wrongful death suit, the defendant argued that it was unfair to apply collateral estoppel to a bankruptcy court's finding that he had willfully and maliciously caused an accident which killed two people because "he had an 'important new witness' who did not testify in the bankruptcy proceedings." *Id.* at 887. According to the defendant, "after the bankruptcy proceeding[,] he was finally able to locate and depose the driver of the car he rear-ended in the intersection. He claims that if he called to testify, the other driver would provide evidence consistent with [his] theory of the case (*i.e.*, that [he] was unconscious and acted involuntarily)." *Id.* The state court rejected the defendant's argument of unfairness because

> the other driver's testimony goes to the weight of the evidence supporting [the defendant's] version of the case; it does not establish a previously undiscovered defense theory nor does it result in a change in the parties legal rights. "An exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence. Otherwise there would be no end to litigation."

*Id.* at 888.

At the hearing, Mr. Khanna argued that *Roos* is distinguishable from his case because there the new evidence was testimonial in nature, whereas here the new evidence consists of documents. This is not a material difference. Moreover, in *Evans v. Celotex Corp.*, 194 Cal. App. 3d 741 (1987), the alleged new evidence was documentary in nature rather than testimonial, and yet the

United States District Court

For the Northern District of California

1   court still applied collateral estoppel. *Evans* was a wrongful death suit, in which the plaintiffs

2   argued that collateral estoppel should not bar their action because there were new facts that had

3   occurred since the judgment in the prior litigation (a personal injury suit brought by the deceased) --

4   namely, a lung biopsy which would not have been performed while the deceased was alive. *See*

5   *Evans*, 194 Cal. App. 3d at 747. According to the plaintiffs, "as a result of the better diagnostic

6   evaluation following the autopsy, asbestosis could be proved as the proximate cause of [the

7   deceased's] death," although the plaintiffs did not indicate what the biopsy showed and how it

8   differed from the evidence at the personal injury trial. *Id.* The court acknowledged that "[r]es

9   judicata or collateral estoppel 'was never intended to operate so as to prevent a re-examination of the

10  same question between the same parties where, in the interval between the first and second actions,

11  the facts have materially changed or new facts have occurred which may have altered the legal rights

12  or relations of the litigants.'" *Id.* at 748. But, the court stated, in the case before it, there were no

13  new facts or issues that came to light after the prior litigation:

> The legal relationship of the deceased vis-a-vis Celotex had not changed and there were no new events or conditions which altered the respective rights of the parties or caused a different legal doctrine to be applied. Here, the additional test performed during the autopsy simply goes to the weight of the evidence against Celotex; *i.e.*, this evidence did not establish a previously undiscovered theory of liability nor did it denote a change in the parties' legal rights.

18  *Id.*

19      The situations in *Roos* and *Evans* are analogous to the situation here. In the instant case, the

20  new evidence proffered by Mr. Khanna goes only to the weight of the evidence supporting his case -

21  - *i.e.*, whether or not AFL actually existed. It does not establish a previously undiscovered theory

22  nor does it result in a change in the parties' legal rights. Therefore, the new evidence proffered by

23  Mr. Khanna does not defeat collateral estoppel.

24      Accordingly, based on collateral estoppel, the Court finds that the remaining claims against

25  Ms. Albertsen-Murray and Ms. Verstegen are precluded and these claims are dismissed with

26  prejudice.

27  ///

28  ///

### III.    CONCLUSION

        For the foregoing reasons, all claims raised by Mr. Khanna against all Defendants are dismissed with prejudice.  The Clerk of the Court is directed to enter judgment in the case in favor of Defendants and close the file in this case.


        IT IS SO ORDERED.


Dated:  September 10, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge